# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# VALDOSTA DIVISION

| | |
|---|---|
| WILLIE MAE STUART, a/k/a WILLIE MAE STEWART, | * |
| Petitioner, | * CASE NO. 7:07-CV-90000 HL<br>28 U.S.C. § 2255 |
| v. | * CASE NO. 7:05-CR-00002 HL |
| UNITED STATES OF AMERICA, | * |
| Respondent. | * |

## REPORT AND RECOMMENDATION

Petitioner Willie Mae Stewart was indicted in this court on January 1, 2005, for a single count of Possession of Cocaine Base With Intent To Distribute in violation of 21 U.S.C. § 841(a). (R-1). Attorney Gerald B. Williams entered an Entry of Appearance for Petitioner Stewart on January 27, 2005, and represented her through judgment in her case. On March 9, 2005, Petitioner Stewart entered into a Plea Agreement with the Government and also entered a Plea of Guilty to the Indictment. She was sentenced by the Court on May 26, 2005 (R-26), and immediately thereafter signed and filed a Waiver of Appeal. (R-28). Judgment was entered on her sentence on June 13, 2005. (R- 29). Petitioner filed no direct appeal of her conviction or sentence.

On June 16, 2006, Petitioner Stewart filed in this court a Motion inquiring as to whether a Rule 35 Motion had been filed by Willie Mae Stewart. (R-30). The record does not reflect that any Rule 35 Motion had ever been filed in Petitioner's case, and none was anticipated from Petitioner's Plea Agreement.

Just over two years after Judgment was entered in Petitioner's case, she filed on June 26, 2007, a Motion To Vacate, Set Aside, or Correct her Sentence Pursuant to 28 U.S.C.§ 2255 (R-31), together with her Memorandum In Support thereof (R-32). The sole contention made in Petitioner's § 2255 Motion was that:

> Counsel did not file an Appeal as I asked counsel to do, I was under the assumption all this time I had an appeal pending.

(R-31 at 4). Pursuant to the holding in *Montemoino v. United States,* 68 F. 3d 416 (11th Cir. 1995), an evidentiary hearing was ordered on the sole issue of whether Petitioner had requested an appeal of her conviction which her counsel had failed to file. A hearing was held on Petitioner's Motion on September 7, 2007. *See* Transcript, R-44. Petitioner Stewart bore the burden of establishing that she was entitled to any extraordinary relief. *See Helton v. Sec'y for Dep't of Corr.,* 259 F.3d 1310, 1313-14 (11th Cir. 2001).

On her initial direct examination at the hearing on September 7, 2007, Petitioner Stewart appeared lucid, aware of her surroundings and the purpose of the litigation. She was responsive to her new counsel's questions. She testified that she recalled being sentenced by Judge Lawson on May 26, 2005, subsequent to her guilty plea, and that Attorney Williams was her counsel during the entire period. (R-44 at 6). However, Petitioner testified that she did not remember that it had been explained to her that her Plea Agreement contained a waiver of appeal, which excepted only a sentence that exceeded the then existing guideline range. *(Id.).* Petitioner Stewart's attorney asked:

> [D]id you understand that under normal circumstances you have ten days in which to request that your counsel file a notice of

2

> appeal or you can do it, have the Clerk do it for you, appealing
> your sentence to the Eleventh Circuit Court of Appeals

Petitioner responded as follows:

> That's what, on the day of my sentence, that's what I thought I
> was saying at the table when I got through. Mr. Williams had
> two papers down on the table for me to sign for the appeal and
> I asked him which one and he said either one of them.

*Id.* at 7. Petitioner Stewart added, "I signed it right there in the court room. . . . I thought I was signing an appeal, sir. That's what I thought I was signing. . . . That's what I was told I was signing. . . . I don't know what it was." *Id.* Her attorney then asked her, "Whatever you signed that day thinking you were signing a request for an appeal, did you think an appeal was being prepared on your behalf?" Petitioner answered, "Yes." Her counsel asked:

> Q. You don't recall specifically, I take it, that you were waiving your right to appeal any sentence that was below the top of the guidelines
>
> A. No, why should I.

*Id.* at 8. The remainder of Petitioner's initial direct examination was unresponsive to her own counsel's questions and immaterial to the issues before the court. In fact, Petitioner Stewart continually appeared to evade and avoid the subject issue.

The Government's Counsel asked Petitioner, "Now you signed a waiver of appeal, didn't you, ma'am?" To which Petitioner Stewart answered, "Yes, I guess so. I didn't know what I was signing. . . . I thought I was signing an appeal." (*Id.* at 18, 19). Government Counsel concluded his initial cross-examination of Petitioner Stewart with the following

3

colloquy:

> Q. Now, within the last, say the ten days after you were sentenced, did you ever call Mr. Williams or have anybody to call him, or did you send him a letter saying that you wanted him to appeal your case?
>
> A. I don't recall seeing Mr. Williams no more.
>
> Q. Okay. But did you call him?
>
> A. I don't recall that either.
>
> Q. Did you have anybody call him and say I want you to appeal – –
>
> A. I did not have anybody to do nothing with my case. None of my family, I didn't have them to do anything with my case.
>
> Q. And, again, you remember signing this waiver of right to appeal?
>
> A. I remember signing the paper, sir. . . . But I thought I was signing an appeal paper.

(R-44 at 23, 24). Additionally, in her testimony, Petitioner Stewart acknowledged that she had alleged in her petition that her counsel had told her that she did not have grounds to appeal, because her sentence had not gone above the guidelines. *Id.* at 31, 32. Petitioner's acknowledgment indicates that there was discussion of her right to appeal, and by implication it indicates why she elected to signed a waiver of appeal rather than pursue a direct appeal.

The only other witness called at Petitioner's § 2255 hearing was her former Attorney, Gerald B. Williams, who testified assertively that Petitioner Stewart never indicated to him: 1) that she could not read or write; 2) that she did not understand the various court proceedings; 3) that she had any eyesight problems at the time of her sentencing when she

signed the waiver of appeal; nor, 4) that she was sick to the point that she did not know what was going on. (R-44 at 40, 41).

Attorney Williams also testified assertively that Petitioner Stewart did not indicate to him or the Court during her guilty plea hearing that she was suffering from any problems to the extent that she did not know what was going on, or that she could not participate in the proceedings, or that she could not see well at that point. *Id.* at 46.

Attorney Williams testified that, after Petitioner Stewart was sentenced, he talked with her in the hall and advised her that:

> [E]ither you have to waive your right to appeal or we have to file a notice of appeal. That is Judge Lawson's policy. Judge Lawson says you will file one or the other. . . . I advised Willie Mae that any appeal was going to be frivolous anyway; however, you know, you can sign this, you know, waiving the right to appeal or you can appeal. What do you want to do? . . . She said she was going to waive her right to appeal. I said, if you're going to waive your right to appeal, sign this.

*Id.* at 47. Attorney Williams further testified that Petitioner did not indicate to him at that time that she did not understand what she was signing, nor did she indicate that she thought she was signing an appeal. *Id.* In fact, Attorney Williams testified that there was no doubt in his mind that it was clear to Petitioner Stewart that she was signing a waiver of appeal, and that neither Petitioner nor anyone contacted him thereafter about filing an appeal for her. *Id.* at 48, 49. Throughout her testimony, Petitioner Stewart testified that after sentencing, Attorney Williams had *two* papers on a table when they were discussing that she had to sign a waiver of appeal or file an appeal of her sentence. She contended that one of the papers was *an appeal,* and that she thought that was what she was signing. Attorney Williams was

5

asked, on cross-examination, in reference to the time immediately after Petitioner's sentencing, "[Y]ou did have two documents?" He answered:

> I, no, I don't think I had two documents, you know, because if there is a notice of appeal that is going to be filed, I file that myself. I do not normally have the client file a notice of appeal. No, I had one document.

*Id.* at 61. The cross-examination colloquy continued as follows:

> Q. From your perspective, when Ms. Stewart signed the waiver of appeal, she knew what she was giving up; and, more importantly, she knew what she was signing
>
> A. I would say that she knew what she was giving up and she knew that I was not going to file a notice of appeal.

*Id.* at 63. On redirect examination, Attorney Williams was asked if he had "any questions about whether she understood what she was signing at the sentencing when he gave her the waiver of right to appeal?" He answered, "I have no question about that whatsoever." *Id.* at 65.

In his post hearing Brief (R-50), Petitioner's Counsel questions Petitioner's mental health at the time of her guilty plea, but provides nothing more than speculation from Petitioner's evasive responses to the Court's questions to her. Counsel also draws attention to Petitioner's response, "My conduct?", to the Court's question to her as to whether the stipulation of facts read to her from her Plea Agreement "truly" described her "conduct?" Petitioner's response is less an indication of her lack of understanding of the criminal conduct for which she was to be sentenced (as Counsel implies), than an understandable response to a description of the execution of the search warrant and the results thereof, little

6

of which referenced *action* or *conduct* on her part at that time. Nonetheless, Petitioner did concede that the stipulated facts were a true description of the criminal offense to which she was pleading guilty. (R-46 at 17, 18). In context, the response has no unusual significance. Petitioner Stewart's question, upon being sentenced by the court and advised of her right to file a notice of appeal within 10 days, as to whether she would get physical therapy, also, more likely demonstrates that she was *not* interested in filing a notice of appeal, than otherwise.

Petitioner's demeanor during her testimony at her § 2255 hearing, her evasiveness with counsel, and the manner and content, or lack of content, of her testimony strained her credibility. On the other hand, the demeanor, assertiveness, and manner and content of Attorney Williams testimony at hearing ascribed credibility to his testimony. Moreover, Petitioner Stewart has failed to carry her burden of proof that she actually made any request of counsel to file an appeal on her behalf. Her post-sentence conduct, as related by her, does not demonstrate ineffectiveness of counsel, nor does it demonstrate any effort on her part to request an appeal of her sentence after her conviction by guilty plea.

**WHEREFORE, IT IS RECOMMENDED** that Petitioner's Motion To Vacate, Set Aside, or Correct her Sentence Pursuant to 28 U.S.C.§ 2255 be DENIED. Pursuant to 28 U.S.C. § 636 (b)(1), Petitioner may serve and file written objections to this Recommendation with the **UNITED STATES DISTRICT JUDGE**, WITHIN TEN (10) DAYS after being served with a copy hereof.

SO RECOMMENDED this 11th day of July 2008.

S/ G. MALLON FAIRCLOTH
UNITED STATES MAGISTRATE JUDGE